(41 Misc. Rep. 456.)

## TOWN OF SOUTHOLD v. PARKS et al.

(Supreme Court, Trial Term, Suffolk County. October, 1903.)

1. TOWNS—BOUNDARIES—COLONIAL GRANT.

> The colonial patent, October 30, 1876, to the town of Southold, lying northerly of Peconic and Gardiners Bays, describing the southern boundary of the grant as "on the south with an arm of the sea," does not give the town title to the lands under water in those bays, as the word "with," in the description, should be deemed synonymous with "by," and the south boundary of the patent is the high-water mark on the north side of those bays.

Action by the town of Southold against Francis B. Parks and others to determine title to land under the bays eastward from Riverhead. Dismissed.

Asa A. Spear (Albertson Case, of counsel), for plaintiff.

Herbert L. Fordham, for defendants.

Timothy M. Griffing, for board of supervisors of Suffolk county.

SMITH, J. This action involves the determination of the ownership of land under the waters of Peconic and Gardiners Bays at the eastern end of Long Island. In 1884 the Legislature, assuming the title to that land to be in the state of New York, passed an act (Laws 1884, p. 468, c. 385, as amended by Laws 1896, p. 1367, c. 916) which ceded to Suffolk county all the right, title, and interest which the people of the state of New York had in and to the lands under the waters of Gardiners and Peconic Bays for the purpose of oyster culture only, to be managed and controlled by the board of supervisors. The defendants, by virtue of conveyances made under the provisions of this act, claim title for the purposes of oyster culture to a tract of land under that portion of Peconic Bay locally known as "Town Harbor," or "Southold Bay," containing 64½ acres, and are in exclusive possession thereof for that purpose.

The town of Southold, the plaintiff herein, brings this action to eject the defendants from the premises in question, claiming that the town has title to these premises, together with the whole of the land under the water of Peconic Bay, and to a large portion of the land under the waters of Gardiners Bay, by virtue of a colonial patent granted to the town by Colonial Governor Andross, which patent is dated October 30, 1676. If the patent does convey the premises in dispute to the town, the town is entitled to judgment of ejectment against the defendants. If the patent does not convey the premises, it is conceded by all parties that the title thereto was in the state of New York at the time of the passage of the act of 1884, and therefore the defendants would be entitled to judgment dismissing the complaint on the merits of the action.

The following is the essential portion of the description of the premises conveyed by the Andross patent to the town:

"A certaine Towne * * * upon Long Island commonly called and knowne by the name of Southold situate lying and being on the North side of the said Island towards the Sound having a certain tract of land thereunto belonging. The western bounds whereof extend to a certaine River or Creeke called Wading Creeke in the Indyan Tongue Pauquacunsuck and bounded to the eastward by Plum Island together with the said Island, on the north with the Sound or North Sea and on the South with an arme of the Sea or River which runneth up between Southampton land and the aforesaid tract of land unto a Certaine Creeke which fresh water runneth into called in English the red Creeke * * * together with said creek and meadows belonging thereunto * * * so running on a straight line from the head of the afore named fresh water to the head of a Small Brooke that runneth into the Creeke called Pauquacunsuck including all the necks of land and Islands within the afore described bounds and limits."

The title of the town to Peconic and Gardiners Bays is dependent upon the meaning and effect to be given to the word "with" in defining the southern boundary of the grant. The claim of the town is that it should be construed as synonymous with the word "including." Given this meaning, the patent would read:

"And on the south including an arme of the Sea or River which runneth up between Southampton land and the aforesaid tract of land unto a Certaine Creeke which fresh water runneth into called in English the red Creeke."

The defendants contend that the word "with," as used in defining the bounds of the grant, is synonymous with the word "by." In Webster's Dictionary it is stated in a note under the word "with":

" 'With' and 'by' are closely allied in many of their uses and it is not easy to lay down a rule by which to distinguish their uses."

Considering the purposes for which the word "with" is employed in the grant, and taking the whole description together with all the admitted facts in connection therewith, I have no hesitation in reaching the conclusion that the word "with" in the description is used synonymously with the word "by." The description purports to give the bounds or limits of the grant. The north boundary is with or by the sound, the south boundary is "with an arme of the Sea or River which runneth up between Southampton land and aforesaid tract of land." If the south boundary is held to be inclusive of the "south arme of the Sea or River," then the north boundary must be held to be inclusive of the sound. Such a result is wholly improbable and incredible.

The southern boundary is "with an arme of the Sea which runneth up between Southampton land and the aforesaid tract of land." The aforesaid tract of land is the land to be conveyed by the patent. If the "arme of the Sea runneth up between the land granted by the Patent and the Southampton land," it could not possibly be a part of either Southampton or Southold.

I therefore construe the south boundary of the patent to be high-water mark on the north side of Peconic and Gardiners Bays, following the line of high-water mark of Peconic Bay around to Red creek.

It is suggested by plaintiff that, as the mouth of Red creek is on the south side of Peconic Bay, the south boundary line of the patent,

extending westerly from Plum Island by the north side of the bay, would not reach the terminus of the line at Red creek. It is sufficient answer to this suggestion that the description of the south boundary line is very general in its terms, and does not provide that the line shall run uniformly westerly until it reaches Red creek, and that, as matter of fact, before the line reaches the head of the bay it would, in following the irregular coast line of the upland, run, in different parts of its course, easterly, southerly, and northerly.

The courts have held that evidence of usage and under an ancient grant or patent is admissible to throw light upon its interpretation in case of any ambiguity in its terms. I do not think there is any ambiguity in the description of the land granted by the patent, but all the evidence of usage of the bays in question introduced by both the plaintiff and defendant tend to establish the conclusion that the town did not own any portion of either bay, and that, for over two centuries after the patent was granted, the inhabitants made no claim of any such ownership. The inhabitants of the town living near the bays fished in the bays, but they neither asked nor obtained from the town permission to do so. The inhabitants of other towns and other states also fished in the bays without let or hindrance, and with the same freedom that they would enjoy in the ocean.

There is no evidence that the town ever attempted to regulate in any manner the fishing in the bays in question, or to exclude any person therefrom. The resolutions passed by the town about 100 years ago forbidding nonresidents of the town taking any claims within the bounds of the town are not shown to have any reference to the bays in question, because the resolutions do not set forth what is claimed to be the bounds of the town. To have any significance in this connection, it should be shown that under these resolutions nonresidents were prevented from taking clams from the bays in question.

The fact that Robins Island, which lies in Peconic Bay, was granted by the Colonial Governor by a separate patent to Charles Williams and Frederick Morris in 1733 indicates that the sovereign power did not construe the town patent to include Peconic Bay.

Since the organization of the state government the state authorities have in numerous instances made grants of land under the water of the bays in question to the adjoining upland owners, and until a very recent date their jurisdiction to make such grants has not been questioned by the town; and while the town has since the date of the patent exercised control over the creeks and inland waters, admittedly within the limits of the patent, it has not until within the past few years attempted to make any grants of land under the waters of the bays in question.

The remonstrance by the inhabitants of the town to the Legislature, dated December 16, 1835, against a grant of land under water to S. B. Nicoll, adjacent to Shelter Island, was not based upon the lack of power by the Legislature to make the grant, but was based entirely upon the unfairness and injustice of such action. If the town had claimed title to the premises applied to be granted, the remonstrance would have pointed out to the Legislature the ineffectiveness and uselessness of the proposed grant.

It is conceded that no part of the bays in question are included in the patents to the towns of Easthampton, Southampton, or Shelter Island. There seems no good reason why the sovereign power should exclude all those towns which border on these bays from all ownership therein, and give exclusive ownership thereof to the town of Southold. It is more reasonable to conclude that it was the intent of the sovereign power to make no grant of any portion of those bays to any of the towns that border thereon, to the end that all those towns should have equal rights therein.

For the reasons stated, I decide that the patent to the town does not include the land under water occupied by the defendants, and the defendants are entitled to judgment dismissing the complaint on the merits, with costs.

Complaint dismissed, with costs.